IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IRENE M. ALBERT,

       Plaintiff,

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

_____

Civil No. 05-890-AS

FINDINGS AND RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

    Claimant, Irene Albert, brings this action pursuant to the
Social Security Act (Act), 42 U.S.C. § 405(g), seeking judicial
review of the Social Security Commissioner's (Commissioner) final
decision. The Commissioner denied Albert's claim for Disability
Insurance Benefits (DIB). For the reasons set forth below, the
Commissioner's decision should be reversed and remanded for
additional proceedings.

1 - FINDINGS AND RECOMMENDATION           [LB]

## PROCEDURAL BACKGROUND

Albert filed her application for a Period of Disability and DIB on June 28, 2002, alleging disability since June 17, 2002, due to the combined effects of chronic migraines, chronic neck pain, bipolar, depression and mood disorders, carpal tunnel syndrome and degenerative disc disease. Albert's application was denied initially and upon reconsideration. On May 14, 2004, after a timely request for a hearing, Albert appeared and testified before an administrative law judge (ALJ). Albert was represented by counsel, Arthur P. Klosterman. Gordon Albert, claimant's husband, and Kathryn Heatherly, a vocational expert (VE), also appeared and testified.

On July 13, 2004, the ALJ issued a decision finding Albert not disabled, as defined in the Act, through the date of the decision. Albert filed a request for the review of the ALJ's decision on August 23, 2004. On April 26, 2005, the Appeals Council denied Albert's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 422.210.

## STATEMENT OF FACTS

The medical records submitted in this case accurately set forth Albert's medical history as it relates to her claim for benefits. The court has carefully reviewed the medical records submitted here, and the parties are familiar with the records. In

addition, the Commissioner stipulates to the ALJ's summary of the medical and testimonial evidence. Accordingly, the details of those medical records will not be recounted here.

Albert was 39 years old at the time of the hearing; had completed two years of college, earning an Associate Degree in Business Administration; and had past relevant work experience as an administrative assistant and a house cleaner. Albert had not engaged in substantial gainful activity since the onset date of disability.

At the 2004 hearing, Albert testified on her own behalf. Albert testified regarding her past work experiences, her mental and physical limitations, her medications and the side effects, and her daily activities. Albert testified that her limitations in combination have "completely lowered my ability to concentrate, to focus on any given item. Things that I use to do for joy, for feeling well . . . I don't do at all anymore. . . . . I can't -- everything has been shortened that I use to enjoy, if not completely taken away."

Albert's husband, Gordon, testified regarding his observation of the impact of his wife's mental and physical conditions. He noted that "[b]etween her low back pain and her neck and her shoulders" they could no longer do things together such as hiking and biking.

The VE testified that Albert's past relevant work as an administrative assistant was classified as semi-skilled to skilled employment and ranged between light and sedentary. The house cleaner work was classified as unskilled and ranged from light to medium. Based on the ALJ's hypothetical, the VE opined that Albert would not have the residual functional capacity (RFC) to return to her past relevant work as an administrative assistant or house cleaner, but could perform other work such as motel cleaner, file clerk and certain production jobs.

The ALJ found that Albert had not engaged in substantial gainful activity since June 17, 2002, the alleged disability onset date, through the present; the medical evidence established that her ability to work was limited by a combination of impairments considered severe, but she did not have an impairment or combination of impairments which meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; Albert's statements regarding her impairments and their impact on her ability to work were not entirely credible; she did not retain the RFC to perform substantial gainful activity in her past relevant work as an administrative assistant and house cleaner; Albert was an individual of "younger age" within the meaning of the Act; she had two years of college education, unskilled/semi-skilled work experience, and transferability of skills was not an issue here; and, she retained the RFC to perform other jobs since her

onset date.   Accordingly, the ALJ found that Albert was not disabled under the Act and not entitled to a Period of Disability or DIB.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.   <u>Id</u>.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.   <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).   The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.   <u>Andrews</u>, 53 F.3d at 1039-40.   If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; the court may not substitute its judgment for that of the Commissioner's.   <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001)

To be found disabled under the Act, an individual must have a medically determinable physical or mental impairment of such severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy. <u>See</u> 20 C.F.R. '' 404.1520, 416.920.

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. ' 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. '' 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. '' 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. '' 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial

gainful activity." Id.; see 20 C.F.R. '' 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. '' 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work in the national economy. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. '' 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden, then claimant is deemed not disabled. 20 C.F.R. '' 404.1566, 416.966.

## DISCUSSION

Albert contends that the decision of the ALJ was not based on substantial evidence as required by 42 U.S.C. § 405(g), and the ALJ erred as a matter of law in denying her claim. Specifically, Albert argues that the Commissioner erred by: (1) finding her pain testimony not credible; (2) disregarding lay witness testimony; (3) failing to assess accurately her RFC, including making a determination that she could perform sustained work and presenting a complete hypothetical question to the VE; and, (4) failing to consider the combined effects of her impairments. The court has considered these challenges to the Commissioner's decision and, based on the grounds set forth below, has determined that there was

not substantial evidence in the record to support the ALJ's finding that Albert was not disabled.

## I.  Albert's Pain Testimony

Albert argues that the ALJ failed to identify clear and convincing reasons for rejecting her testimony and that testimony should be credited as a matter of law because it is supported by the record.  Albert maintains that the ALJ was required to identify specific testimony found not credible and explain what evidence undermined that testimony.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

It is well-settled law that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  See, e.g., Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  If there is evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-348 (9th Cir. 1991)(en banc).  "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'"  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). General findings will not satisfy the ALJ's burden; rather, the ALJ must identify what testimony is not credible and the evidence relied upon for that finding.  Id. at 834.

In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which she complains. See Smolen v. Chater, 80 F.3d 1281, 1284 (9th Cir. 1996). An ALJ may properly discredit a claimant's allegations of disability "if [the] claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," or if there is evidence of "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

As a threshold matter, the Commissioner contends that the ALJ found affirmative evidence of malingering, which constitutes a clear and convincing reason to reject a claimant's subjective testimony. According to the Commissioner, the ALJ inferred that Albert was malingering when he used the term "secondary gain" when referring to the motivation for Albert's disability application. Additional evidence of malingering cited by the Commissioner is the ALJ's discussion of Albert's "extensive narcotic seeking behavior."

Although the ALJ makes some passing remarks to imply malingering in his summary of the medical evidence, he did not

expressly find that Albert is a malingerer.    Instead, he acknowledged his obligation to review Albert's testimony and consider relevant facts enunciated in 20 CFR § 404.1529(c)(3) and Social Security Ruling 96-7[1] for evaluating a claimant's complaints of pain.    Thus, the issue is whether the ALJ's reasons are supported by the evidence.

A review of the ALJ's written opinion reveals a thorough analysis of Albert's allegations contrasted with the medical and testimonial evidence of record.    The ALJ carefully consider each of Albert's subjective complaints and then provided a detailed

---

[1]    20 CFR § 404.1529(c)(3) provides:

Factors relevant to your symptoms, such as pain, which we will consider include:

(I) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain and other symptoms;

(v) Treatment, other than medication, your receive or have received for relief, of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain and other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

analysis of why or why not the allegation was supported by the
record as a whole.   The ALJ then summarized his findings as
follows:

> In sum, the claimant has had a lot of complaints and most of
> them have been overstated and/or have been not serious.  She
> has claimed bilateral carpal tunnel syndrome but the objective
> findings revealed this has been "mild" and she has not
> required significant and/or extended treatment such as
> physical therapy.  She has done craft work, garden work , and
> other housework, all of which require significant use of both
> hands.  In any event, my findings of the described residual
> functional capacity for limited range of light exertion work
> with the listed non-exertional limitations adequately address
> any reasonable restrictions she may have because of bilateral
> carpal tunnel syndrome, as well as other conditions she has
> alleged, including hip pain, left Achilles tendon pain, and
> right leg anterior compartment syndrome.  I emphasize that
> these have been either non-supported by the evidence and/or
> resolved.
>
> Whereas I acknowledge the claimant has limitations as a result
> of her cervical condition, she has been significantly better
> after the surgery.  Regarding her lumbar condition, she has
> been recommended to exercise.  She has indeed exercised, as
> she has reported that she walks and does yoga and pilates.
> Her migraines have waxed and waned, and have been generally
> under better control than she admits.  She has reported some
> bipolar symptoms, but she  has generally been using an anti-
> depressant (Effexor), which has worked well in controlling her
> related symptoms.  Additionally, in two different occasions
> she has been assigned GAFs of 65-70, which do not constitute
> "sever" or "moderate" symptoms, but "mild."
>
> On the other hand, Ms. Albert's condition is compromised by
> overuse and addiction to pain medications.  She was treated
> two times for this addiction and she has continued exhibiting
> drug-seeking behavior.  Therefore, I cannot evaluate her
> condition by her "claims" of pain because they were clearly
> driven by her addiction.
>
> Finally, despite Ms. Albert's multiple complaints of pain, she
> has been working, engaging in normal activities of daily
> living, receiving unemployment insurance benefits, and seeking
> to continue college classes.  She has been better after the
> cervical surgery with less pain in that area.  She now focuses

on lumbar spine pain, even though there are limited objective findings in support of this, and bipolar disorder, which has been generally under control and maybe just recently aggravated by her conflict with son that has been characterized as a "situational depression."

Thus, in considering the proper weight to be given Albert's testimony, the ALJ followed the law of this Circuit by identifying specific testimony and providing clear and convincing reasons from the record to support his decision to discredit that testimony. For example, the ALJ cited Albert's testimony that her disability began on June 17, 2002. In response, the ALJ noted the contradictory evidence of record that as of September 2002, she was continuing to work in two part-time jobs. Another example is Albert's assertion of pain in her knee. The ALJ noted that this testimony was contradicted by evidence that Albert knowingly pursed strenuous work on her knees, such as gardening, that exacerbated pain symptoms in her knees. In addition, the record lacked objective findings to support the subjective allegations of knee pain. Finally, the ALJ noted that despite reporting chronic pain, Albert went ice-skating and participated in yoga, pilates and step aerobic classes. The record reveals that Albert exercised, gardened, performed household chores and intended to return to school. This evidence is inconsistent with Albert's claim that she is unable to perform any work related activities.

Thus, as set forth above, the ALJ identified specific evidence in the record that was inconsistent with Albert's claim of a

disability rendering her unable to work.  Accordingly, there is substantial evidence to support the ALJ's credibility determination that Albert's testimony of disabling pain was not supported by other evidence of record.  It is the duty of the trier of fact, and not this Court, to resolve conflicts in the evidence, and if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ.  See <u>Reddick</u>, 157 F.3d at 720-21 ("If the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, the court may not substitute its judgment for that of the [ALJ].").

## II.  Lay Witness Testimony

Albert next contends the ALJ improperly rejected the testimony of her husband, Gordon.  Albert's husband, Gordon, testified regarding his observation of the impact of his wife's mental and physical conditions.  He observed Albert's inability to concentrate due to sever headaches, nausea and light sensitivity.  Gordon also provided testimony on Albert's mood swings, including a tendency to become angry and confrontational.  Finally, Gordon testified that Albert often stoops over when walking and is no longer able to participate in most activities.  In addition, the record includes a written statement from Gordon titled "Third Party Information on Activities of Daily Living and Socialization."

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), an ALJ may, "in addition to evidence from the acceptable medical sources

. . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work."  20 C.F.R. §§ 404.1513(d), 416.913(d)(2005).  Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).    Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider.  Sprague v. Bowen, 812 F.2d 1226, 1231-1232 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("An eyewitness can often tell whether someone is suffering or merely malingering . . . .  [T]his is particularly true of witnesses who view the claimant on a daily basis . . . .").  An ALJ's consideration of lay testimony becomes especially important when a claimant alleges "that pain is a significant factor of his alleged inability to work and the allegation is not supported by objective medical evidence in the file." SSR 88-13; see Smolen, 80 F.3d at 1288. To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so.  Dodrill, 12 F.3d at 919.

Here, the ALJ simply stated that he "examined the testimony and written statements of record provided [by] Gordon Albert, the claimant's husband."  As such, the ALJ failed to provide reasons germane to Gordon Albert.  The Commissioner urges the court to overlook this omission by the ALJ and make a finding of harmless

error.   The Commissioner then sets forth reasons to discount Gordon's testimony.   While the reasons set forth by the Commissioner to disregard Gordon's testimony arguably are "germane" to him, it is the role of the ALJ, not the court, to provide specific reasons for rejecting lay testimony. See Dodrill, 12 F.3d at 919.   In other words, this court cannot review and affirm the decision of an ALJ on a basis he never invoked. See, e.g., Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

There is some medical evidence in the record to suggest that Albert suffered from such impairments during the relevant time. In addition, there is testimony by Albert's husband concerning the impact of those impairments on her ability to function at home. The ALJ dismissed this testimony without explanation.   That was in error.   The ALJ was required to provide a related explanation. Because the ALJ failed to provide any reasons for rejecting competent lay witness testimony substantial evidence does not support the Commissioner's decision that Albert can perform other work. The decision of the ALJ should be reversed and remanded for additional proceedings.[2]

---

[2]    Even crediting Gordon's testimony as true, the court is unable to say as a matter of law that Albert would have been unable to perform even sedentary work.   It is possible that once these issues are clarified an award of benefits could be warranted, however, the court is unable to so determine on the record before it.   See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)

### III. Accurate RFC

Albert argues that the ALJ failed to consider whether she could engage in substantial gainful activity "on a sustained basis." Albert maintains that the ALJ was required to evaluate all of her impairments including her "severe, frequent and long-lasting headaches" to determine whether she would be able to work on a sustained basis. The fact that on some days she may feel well enough to engage in work is not enough. She contends that such activities only take place on "good days" and are not probative of her ability to sustain regularly-scheduled full-time competitive employment. Albert also points to the VE testimony that an employee who due to pain and headaches would miss two or days a month would not be able to maintain competitive employment.

Social Security regulations define RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c). In other words, what an individual can still do despite her limitations. See SSR 96-8p. In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a); Lester, 81 F.3d at 833 (internal quotation marks omitted). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then

determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).

SSR 96-8p defines RFC as "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."   The burden is on the ALJ to prove that Albert was capable of performing her past relevant work or alternate jobs in accordance with her RFC.  Perminter v. Heckler, 765 F.2d 870, 871-872 (9th Cir. 1985).

Prior to determining an individual's RFC for work on a regular and continuing basis, the ALJ must first assess the nature and extent of her physical and mental impairments.   The record on Albert's exertional and nonexertional limitations appears complete. The ALJ did consider the impact of Albert's migraine headaches and determined that they "have waxed and waned, and have been generally under better control that [Albert] admits."  For example, the ALJ noted that:

> The claimant described her migraine history, which also seemed to be of less frequency since the surgery.  She had been tried on migraine prophylactic medications including beta-blockers, Depakote and Neurontin.  Among those listed, she stated that it was the Neurontin that worked better for her.
>
> . . . .
>
> The claimant reported on March 6, 2003, that her migraine episodes had diminished significantly and her need for Maxalt had likewise decreased.

. . . .

On September 9, 2003, [Albert] left a message to her physician stating the Midrin had not provided relief and that she still had body aches while taking it.  She noted that Butal had helped relieve her body aches pain as well as her headaches.

The court finds that the ALJ did consider the full extent of limitations imposed by Albert's migraine headaches during the relevant time period.  The ALJ considered the impact of that limitation and made a determination regarding Albert's RFC that is supported by the evidence of record.  Moreover, as the Commissioner points out, the burden is on Albert to produce evidence that she is unable to sustain substantial gainful activity.  See, e.g., Tackett v. Apfel, 180 F.3d 1094, 1098-1099 (9th Cir. 1999).  The ALJ does not have an affirmative duty to produce evidence that Albert is capable of substantial gainful activity but, rather, he determines whether there is substantial evidence in the record to support Albert's alleged inability to perform substantial gainful activity. The ALJ has met that duty here.

Albert also challenges the ALJ's determination of RFC on the ground that he failed to take one of her impairments -- unable to climb ladders, ropes or scaffolds and only occasionally climb stairs -- into account when formulating the hypothetical for the VE. As such, it was error for the ALJ to rely on the VE's opinions and conclusions.

At step four of the sequential evaluation, claimants have the burden of showing that they can no longer perform their past

relevant work. 20 C.F.R. § 404.1520(e).  Although the burden of proof lies with the claimant at step four, the ALJ "still has a duty to make the requisite factual findings to support his decision." Pinto, 249 F.3d at 844 (citing Social Security Ruling (SSR) 82-62).  As such, the ALJ must look at the RFC and the physical and mental demands of the claimant's past work in making findings of fact as to the past work's requirements.  20 C.F.R. § 404.1520(e); SSR 82-62.

In his written decision, the ALJ concluded that Albert retained the RFC:

> to perform a limited range of light exertion work.  "Light exertion work" involves lifting no more than 20 pounds at time with frequent lifting or carrying of objects weighing up to 10 pounds.  The range of light exertion work activity she can do is also narrowed by non-exertional limitations.  she is unable to climb ladders, ropes or scaffolds.  She is limited to occasionally climb ramps or stairs.  She is restricted to occasionally stoop, crouch or crawl.  She is limited to occasionally reach overhead.  She is restricted to non-complex work or to work at a low-en of semi-skilled work.  She should have limited contact with the public.

This assessment is consistent with the medical evidence in the record.  Based on the ALJ's RFC findings, the ALJ concluded at step four that Albert could not return to her past relevant work as an administrative assistant and house cleaner.  If the ALJ finds that a claimant is able to return to her past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant can perform other jobs and the testimony of a VE is necessary.  Polny v. Bowen, 864 F.2d 661, 663-664 (9th Cir.

1988)("If the claimant is unable to perform his past work and has significant non-exertional limitations, then the testimony of a vocational expert is required to demonstrate the existence of specific jobs that the claimant is capable of performing despite these restrictions.").

To elicit meaningful testimony from the VE, the ALJ must pose a hypothetical question that accurately reflects all of the claimant's functional limitations and work restrictions. Tacket, 180 F.3d at 1103-1104. It is, however, proper for an ALJ to limit a hypothetical to only those restrictions which are supported by substantial evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). Thus, in order for the VE's opinion to constitute "substantial evidence" supporting a finding of the claimant's ability to perform work, a hypothetical question posed to the expert must include all the claimant's limitations and restrictions, unless the ALJ has validly rejected a restriction. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

The Commissioner concedes that the ALJ's hypothetical to the VE did not state that Albert's RFC precluded her from climbing ladders, ropes or scaffolds. The Commissioner insists, however, that it was harmless error as the jobs listed by the VE do not require Albert to climb ladders, ropes or scaffolds. The VE testified that Albert could perform the positions of motel cleaner, small product assembly and filed clerk. Climbing is an activity or

condition that does not exist in any of the three jobs listed by the ALJ. See U.S. Dep't of Labor, *Dictionary of Occupational Titles*, 323.687-014 [Motel Cleaner]; 706.684-022 [Small Product Assembly]; 206-367-014 [File Clerk] (4th ed. 1991).

It is well-established that the concept of harmless error applies in the Social Security context. See, e.g., Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless."). Harmless error has been applied "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." Stout v. Commissioner, SSA, 454 F.3d 1050, 1054 (9th Cir. 2005). Thus, harmless may be found if when the error was inconsequential to the ultimate nondisability determination. Id.

While there is no dispute that Albert's RFC includes the limitation on climbing, and that limitation was not posed to the VE, the court finds the error did not impact the ALJ's nondisability determination in this case. As pointed out by the Commissioner, the jobs listed by the VE do not require Albert to climb. Presumably, if the limitation of climbing had been included in the hypothetical, the VE's conclusion regarding jobs Albert could perform would be unchanged. As such, the omission did not impact the ALJ's determination here that Albert was not disabled.

**IV.  Combined Effect of Impairments**

Finally, Albert charges that the ALJ committed a legal error when he failed to assess what effect her mental and physical impairments had in combination and whether that combination of impairments met the listings, physical or mental.  See Lester, 81 F.3d at 829 (ALJ erred by "isolating the effects of Lester's physical impairments from the effects of his mental impairment.").  According to Albert, the ALJ isolated the effects of her physical impairments from her mental impairments and failed to assess the effect of pain on her ability to concentrate.  Albert contends that the ALJ's failure to do so prevented her from demonstrating that the functional criteria listed in paragraph B of 20 C.F.R. §§ 404.1545 and 416.945 were satisfied.

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under [the Act], the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(b).  The ALJ must evaluate the combined effect of any impairments when determining not only the severity of a claimant's impairments, but also when determining the claimant's residual functional capacity to work.  See Smolen, 80 F.3d at 1290 (holding "at the step two

22 - FINDINGS AND RECOMMENDATION                    [LB]

inquiry" the ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe").

Albert's contention that the ALJ failed to consider the combined effect of her impairments is unfounded. A review of the transcript of the hearing and the text of his written decision confirm that the ALJ considered her status/post cervical fusion, lumbar pain, history of migraines, history of bipolar disorder and opioid abuse and the effects of her medication in tandem when assessing her RFC. He determined that the combined effect of those impairments left her unable to resume work as an administrative assistant or house cleaner but that she could perform light work with the enumerated restrictions.

Moreover, the fact that the ALJ moved sequentially, first physical then mental, through the impairments during his evaluation of the evidence is not evidence that he isolated them. Rather it was but one method of analysis. The ALJ's decision repeatedly states that his findings were based on an evaluation of Albert's combined impairments. Also, the ALJ noted that his findings were supported by the assessments of Dorothy Anderson, Ph.D., Bill Hennings, Ph.D., and Maribeth Kallemeyn, Ph.D., all three opinions considered the combination of Albert's physical and mental impairments. Thus, in light of the ALJ's express specific and repeated reference to having considered Albert's impairments in

combination, and the ALJ's thorough discussion of the medical evidence and Albert's daily activities, the Court finds that the ALJ properly evaluated the combined effects of Albert's impairments.

## CONCLUSION

Based on the foregoing, the decision of the Commissioner should be REVERSED AND REMANDED for additional proceedings consistent with this Findings and Recommendation. Accordingly, Albert's complaint (doc. #1) should be DISMISSED and all other motions should be DENIED as moot.

Dated this  28  day of September 2006.


   /s/Donald C. Ashmanskas
      Donald C. Ashmanskas
   United States Magistrate Judge


## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 14, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

24 - FINDINGS AND RECOMMENDATION                    [LB]